UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

HOWARD AYERS,

|  |  |  |
|---|---|---|
|  | Plaintiff, | **REPORT**<br>**and** |
| v. |  | **RECOMMENDATION** |

T. ROBERTS, Correction Officer,                05-CV-0889A(F)
A.F. ZON, Superintendent,
K. FIEGL-BOCK, Senior Corr. Counselor,
TURMBO, Correctional Officer B-Block Hall Captain,

                              Defendants.

_____

APPEARANCES:        HOWARD AYERS, *Pro Se*
                         93-A-2932
                         Elmira Correctional Facility
                         P.O. Box 500
                         Elmira, New York 14902

                         ANDREW M. CUOMO
                         Attorney General, State of New York
                         Attorney for Defendants
                         DARREN LONGO
                         Assistant Attorney General, of Counsel
                         107 Delaware Avenue
                         Fourth Floor
                         Buffalo, New York 14202

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable Richard J. Arcara for

pretrial matters, including report and recommendation on dispositive motions, on August

18, 2006.  The matter is presently before the court on Defendants' motion for summary

judgment, filed August 14, 2007 (Doc. No. 36).

## BACKGROUND

Plaintiff Howard Ayers ("Plaintiff"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, by filing a verified complaint ("Complaint") on December 21, 2005, alleging Defendants, employees of New York State Department of Corrections ("DOCS") at Wende Correctional Facility ("Wende" or "the correctional facility"), violated Plaintiff's civil rights.  Specifically, Plaintiff sets forth four causes of action, including (1) Defendant Corrections Officer Taylor Roberts ("Roberts"), filed a false inmate misbehavior report to retaliate against Plaintiff for acting as chairperson of the prison's Inmate Liaison Committee; (2) Defendant Wende Superintendent Anthony F. Zon ("Zon"), failed to properly supervise Roberts in allowing Roberts to retaliate against Plaintiff; (3) Defendant Senior Corrections Counselor Kay Fiegl-Bock ("Fiegl-Bock"), deprived Plaintiff of due process under the Fourteenth Amendment by permitting witnesses to testify at Plaintiff's disciplinary hearing on the alleged false inmate misbehavior report filed by Roberts only by speaker phone; and (4) Defendant Corrections Officer Arthur Turnball[1] ("Turnball"), denied Plaintiff a religious meal in violation of the First Amendment's Free Exercise Clause, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 ("the RLUIPA"). Answers were filed on August 14, 2006, by Defendants Fiegl-Bock (Doc. No. 6), and Roberts (Doc. No. 8), August 29, 2006, by Defendant Zon (Doc. No. 13), and September 29, 2006 by Defendant Turnball (Doc. No. 16).

On August 14, 2007, Defendants filed the instant motion for summary judgment

---

[1] Defendant Turnball is incorrectly named in the Complaint as "Turmbo."

(Doc. No. 36) ("Defendants' motion"), with supporting papers, including the Declaration of Fiegl-Bock (Doc. No. 37) ("Fiegl Bock Declaration"), attached to which as exhibit A are the records pertaining to Plaintiff's Tier III disciplinary hearing and stamped with page numbers FB001 through FB048 ("Fiegl-Bock Declaration Exh. A"), the Declaration of Robert (Doc. No. 38) ("Roberts Declaration"), with attached exhibits A and B ("Roberts Declaration Exh(s). ___"), the Declaration of Turnball (Doc. No. 39) ("Turnball Declaration"), and the Declaration of Zon (Doc. No. 40) ("Zon Declaration"), with attached exhibit A ("Zon Declaration Exh. A"), a Statement of Undisputed Facts (Doc. No. 41) ("Defendants' Statement of Facts"), and Defendants' Memorandum in Support of Motion for Summary Judgment (Doc. No. 42) ("Defendants' Memorandum").

In opposition to summary judgment, Plaintiff filed on October 5, 2007, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 46) ("Plaintiff's Memorandum"), the Pro Se Plaintiff's Statements of Disputed Factual Issues (Doc. No. 50) ("Plaintiff's Statement of Facts"), and the Declarations of *Pro Se* Plaintiff in Opposition to Defendants' Motion for Summary Judgment Relating to Defendant[s] A. Turnball (Doc. No. 45) ("Plaintiff's Response to Turnball"), A.F. Zon (Doc. No. 47) ("Plaintiff's Response to Zon"), K. Fiegl-Bock (Doc. No. 48) ("Plaintiff's Response to Fiegl-Bock"), and T. Roberts (Doc. No. 49) ("Plaintiff's Response to Roberts").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion for summary judgment (Doc. No. 36) should be GRANTED on the retaliation and due process claims asserted against Defendants Zon, Roberts and Fiegl-Bock, but should be DENIED as to the religious freedom claim asserted against Defendant Turnball.

## FACTS[2]

At all times relevant to this action, Plaintiff Howard Ayers ("Ayers" or "Howard"), was incarcerated at Wende in Alden, New York where he served as chairman of the Inmate Liaison Committee ("ILC"), which held monthly meetings.  Plaintiff maintains that during Plaintiff's tenure as ILC Chairman, Defendant Zon directed Plaintiff to discontinue placing staff misconduct issues on the ILC's monthly meeting agenda because Zon would not report his investigation findings on such alleged correctional officer staff ("staff") misconduct issues to the ILC; rather, Plaintiff was to forward any staff misconduct complaints to the Captain's office.  Plaintiff maintains Defendant's Zon's request regarding the staff misconduct complaints was precipitated by Zon's frustration with Plaintiff's numerous complaints regarding Wende staff members.  According to Plaintiff, Defendant Roberts threatened to retaliate against Plaintiff for filing staff misconduct complaints, many of which were against Defendant Roberts.[3]

In the afternoon of January 7, 2005, Plaintiff, in his ILC chairman role, requested to speak with Defendant Roberts regarding a staff misconduct complaint Plaintiff received on January 6, 2005, from another Wende inmate, complaining about Roberts's unprofessional conduct during a weekly Bible-study group session, but Roberts refused to speak with Plaintiff.  That evening, while Plaintiff was attending a religious service at

---

[2] Taken from the pleadings and motion papers filed in this action.

[3] The Complaint indicates the staff misconduct complaints Plaintiff, as ILC chairman, continued to forward to Defendant Zon were filed by Plaintiff and other, unnamed, inmates.  *See* Complaint ¶ 7 ("On August 21, 2004, Plaintiff Ayers received another complaint concerning staff misconduct, Plaintiff placed a cover letter on to the newly received complaint, once again explaining that the behavior of a few staff is getting out of control, and required Defendant Zon['s] direct involvement because matters were worsening and obviously required his attention.").

Wende, Roberts attempted to open the door to the room in which the prayer service was being held, but another inmate held the door shut.  Plaintiff informed Roberts of the prayer service, to which Roberts allegedly responded he did not want to see any inmates in the hall outside the room. The parties dispute whether Plaintiff attempted to leave the room, bumping into Roberts in an attempt to pass him, and violating Roberts's direct order to return to the room.  *Compare* Complaint ¶¶ 12-13 (describing how Plaintiff greeted Roberts at the door to the prayer service room, prompting Roberts to state that regardless of the nature of the meeting, Roberts did not want any inmates in the hall outside the room, and refusing Plaintiff's request to speak with Roberts's supervisor), with Defendants' Memorandum at 2 (explaining that when Roberts attempted to open the door to the prayer service, another inmate attempted to hold the door closed, and that Plaintiff then came to the door, pushed the other inmate aside, pushed open the door, bumped into Roberts three times while trying to get past him and ignoring Roberts's order to return to the room).

In connection with the January 7, 2005 incident, Roberts, on January 8, 2005, completed an Inmate Misbehavior Report ("the Misbehavior Report"), charging Plaintiff with creating a disturbance, refusing a direct order, and physical interference with an officer.  In response to the Misbehavior Report, Plaintiff filed an Inmate Grievance # WED-22592-05, alleging retaliation by Roberts.  A Tier III disciplinary hearing on the Misbehavior Report was held on January 13, 2005, at which Defendant Fiegl-Bock presided.[4]  Called by Plaintiff to testify as witnesses were inmates Robert Womack

---

[4] References to "Hearing Tr. at __" are to the page of the transcript of the January 13, 2005 Tier III disciplinary hearing held with regard to the Misbehavior Report, a copy of which has been filed as Fiegl-Bock Declaration Exh. A at FB001 - FB040.

("Womack") and Sammy Swift ("Swift"), and DOCS employees Captain Martin Kearney ("Capt. Kearney") and Sergeant James Addison ("Sgt. Addison").  While Womack and Swift testified in person, Capt. Kearney and Sgt. Addison testified over speaker-phone. Roberts, called by Fiegl-Bock, testified in person.  Capt. Kearney and Sgt. Addison both testified that they were aware as of January 7, 2005, that numerous staff misconduct complaints had been filed concerning Roberts's conduct, and neither could recall any disciplinary problems concerning Plaintiff.  Hearing Tr. at 25-27 (Kearney), and 29-31 (Addison).

Following the hearing, Plaintiff was found guilty on all three charges for which Fiegl-Bock, initially, imposed penalties of 180 days in the Special Housing Unit ("SHU"), 180 days loss of packages, commissary, telephone and television privileges, and six months loss of good time credit.  After reviewing Plaintiff's disciplinary record, however, which established Plaintiff had not been the subject of any inmate misbehavior report for five years, Feigl-Bock reduced the length of all penalties to 150 days with the exception of the loss of good time credit which remained at six months.  In stating her hearing disposition, Fiegl-Bock specifically commented on the testimony given by Capt. Kearney and Sgt. Addison, as well as on the fact that Plaintiff's disciplinary record established Plaintiff was not a disciplinary problem.  Hearing Tr. at 39 (observing both Capt. Kearney and Sgt Addison acknowledged numerous staff misconduct complaints had been filed by the ILC concerning Roberts, and stating that the penalty imposed for Plaintiff's actions had been reduced based on Plaintiff's good disciplinary record).  Fiegl-Bock erroneously indicated on the hearing disposition sheet, Feigl-Bock Declaration Exh. A at FB044, that she, rather than Plaintiff, had called Capt. Kearney and Sgt.

Addison to testify.

On January 23, 2005, Wende inmate Eugene Taylor ("Taylor"), then assigned to serve religious meals to inmates in SHU, accompanied by an unidentified staff escort, brought food trays to Wende's SHU, B-Block, for the inmates celebrating the Muslim Eid ul-Adha religious observance, including Plaintiff and Womack.  The parties dispute whether any inmates received more than one tray of food with which to celebrate Eid ul-Adha, with Plaintiff maintaining that each such inmate was to receive one tray containing hot food, and another tray containing cold food, as required by the Muslim religion, and that Womack received two trays.  It is not disputed, however, that originally two trays had been prepared for Plaintiff.  Plaintiff, however, maintains he never received his religious meal, Complaint, Third Claim for Relief ¶ 19, whereas Defendants maintain that Turnball directed Taylor to return both trays designated for Plaintiff's consumption to the feedup area to determine whether Plaintiff was to receive two trays or only one, and that Turnball, after a delay, observed Taylor serve one food tray to Plaintiff, although Turnball was unaware whether the food servings on both trays were consolidated onto a single tray, or whether an entirely new tray was prepared with different foods.  Turnball Declaration ¶¶ 16-27.

## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

7

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255); *Rattner*, *supra*.  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary

judgment has made a properly supported showing as to the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment,

come forward with evidence that would be sufficient to support a jury verdict in its favor.

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment

motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*,

84 F.3d 614, 619 (2d Cir. 1996).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or as
> otherwise provided in this rule, must set forth specific facts showing that there is
> a genuine issue for trial.

Fed. R. Civ. P. 56(e).

As noted, Background, *supra*, at 2, Defendants are alleged to have violated

Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek

damages against any person who, under color of state law, subjects such individual to

the deprivation of any rights, privileges, or immunities protected by the Constitution or

laws of the United States.  42 U.S.C. § 1983.  Section 1983, however, "'is not itself a

source of a substantive rights,' but merely provides 'a method for vindication of federal

rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v.

McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to

identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v.

Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).  Here, Plaintiff alleges

two First Amendment retaliation claims based on the Misbehavior Report filed by

Roberts, a Fourteenth Amendment due process claim with regard to the Tier III

disciplinary hearing held on the Misbehavior Report, and denial of his right to religious freedom under the First Amendment, as determined by the court, and the RLUIPA, with regard to Defendants' alleged denial of the religious meal for Eid ul-Adha.

## 2.    Retaliation

Plaintiff alleges retaliation in violation of the First Amendment against both Roberts and Zon.  Complaint, First Claim for Relief ¶¶ 1-24.  Specifically, Plaintiff alleges that on January 7, 2005, Roberts filed a false inmate misbehavior report against Plaintiff to retaliate against Plaintiff for continuing, as ILC chairperson, to accept staff misconduct complaints from Wende inmates and forwarding such complaints for investigation.  Complaint, First Claim for Relief ¶¶ 5-15.  Plaintiff further alleges that Zon allowed Roberts to retaliate against Plaintiff.  Complaint, First Claim for Relief ¶¶ 1-3, 22-24.

To succeed in a First Amendment retaliation claim, a Plaintiff must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected conduct and the adverse action.  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir.2003). Courts are properly skeptical of prisoner retaliation claims as "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  "  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).   "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness

from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted).  In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes*, 239 F.3d at 493 (internal quotation marks and citations omitted).

The filing of formal prisoner grievances is among the conduct protected by the First Amendment and thus actionable under § 1983.  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (prison officials may not retaliate against prisoners for petitioning for redress of grievances).  *See Smith v. Woods*, 2006 WL 1133247, at * 10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to making of oral complaints to correctional officers), *aff'd*, 219 Fed. Appx. 110 (2d Cir. 2007).  As such, Plaintiff's allegations that he was subjected to retaliatory conduct for filing staff misconduct grievances, including those against Roberts, satisfies the first element of the retaliation claim.

With regard to the second element requiring adverse action, Plaintiff's alleges that Roberts threatened Plaintiff with unspecified harm if Plaintiff did not cease accepting and forwarding the staff misconduct complaints for investigation, and eventually filed the false Misbehavior Report against Plaintiff on January 7, 2005, and that Zon, as Roberts's supervisor, failed to intervene to prevent such alleged retaliatory conduct against Plaintiff.  Insofar as Plaintiff maintains that Defendant Roberts threatened Plaintiff to discontinue filing inmate grievance reports against staff, such evidence satisfies the second element of a retaliation claim.  *See Gill v. Pidlypchak*, 389

11

F.3d 379, 384 (2d Cir. 2004) (allegations that corrections officers made threats against inmate for filing prison grievance along with allegation that corrections officers followed through with such threats constitutes adverse action for § 1983 retaliation claim).  *See also Colon*, 58 F.3d at 872 ("A verified compliant is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)," including that it is made on personal knowledge, setting forth facts that would be admissible in evidence and demonstrating the affiant's competency to testify to the matters in the affidavit).  Nevertheless, although "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a prison grievance, states a claim under § 1983," *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citing *Franco v. Kelly*, 854 F.2d 584, 589-90 (2d Cir. 1988)), there is no merit to Plaintiff's retaliation claim based on Defendant Roberts's filing of a false misbehavior report against Plaintiff.

In particular, the filing of a false misbehavior report does not constitute "a *per se* constitutional violation actionable under § 1983" provided the inmate is afforded due process protection through a disciplinary hearing on the misbehavior report.  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988).  "The key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge]

guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added).  Where the basis for attacking a prison disciplinary disposition is insufficiency of the evidence, due process requires only that "some evidence" in the record support the disciplinary hearing officer's decision, *i.e.*, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Walpole v. Hill*, 472 U.S. 445, 455-56 (1985) (citing *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103,106 (1927)).  Summary judgment on a retaliation claim based on the filing of a false misbehavior report, however, is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him.  *Jones*, 45 F.3d at 679.

Here, although Plaintiff admits that a Tier III disciplinary hearing was held on the charges in the Misbehavior Report on January 13, 2005, Plaintiff maintains that certain flaws with the disciplinary hearing deprived Plaintiff of due process.  Specifically, Plaintiff argues two due process violations, including the fact that two witnesses Plaintiff called to testify on his behalf at the disciplinary hearing, Capt. Kearney and Sgt. Addison, did not testify in person but, rather, over a "speaker-phone," and that the incorrect notation on the hearing disciplinary disposition sheet[5] that Kearney and Addison were called to testify by Fiegl-Bock, rather than by Plaintiff, indicates that Fiegl-Bock gave greater weight to such testimony.  These contentions are, however, without merit.

_____

[5] A copy of Plaintiff's Tier III disciplinary hearing disposition sheet is submitted as pages FB042-FB044 of Fiegl-Bock Declaration Exh. A..

Insofar as Plaintiff challenges the fact that Capt. Kearney and Sgt. Addison testified at the disciplinary hearing over speaker-phone, rather than in person, Plaintiff points to no case law, and the court's research reveals none, holding that due process requires witnesses to testify at inmate disciplinary hearings in person.  Rather, relevant caselaw provides that "[i]t is not a violation of due process at a [prison] disciplinary hearing to take the testimony of a witness outside the presence of an inmate." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999) (citing *Francis v. Coughlin*, 891 F.2d 43, 48 (2d Cir. 1989)).  "Nor does an inmate have a constitutional right of confrontation." *Id*. (citing *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993)).  Furthermore, nowhere within the transcript of the disciplinary hearing does Plaintiff object to the giving of such testimony over a speaker-phone, rather than in person.  *See* Hearing Tr. *passim*.  Accordingly, that Capt. Kearney and Sgt. Addison testified over speaker phone did not deprive Plaintiff of any due process at the Tier III disciplinary hearing.

Nor did Fiegl-Bock, by inadvertently denominating on the disciplinary hearing disposition sheet, Fiegl-Bock Declaration Exh. A at FB044, Capt. Kearney and Sgt. Addison as witnesses she, rather than Plaintiff, called deprive Plaintiff of any federally protected due process.  It is well settled that a clerical error constituting only negligence is insufficient to support a § 1983 deprivation of due process claim.  *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999) ("Plaintiffs challenging asserted deprivations of due process under 42 U.S.C. § 1983 must demonstrate, *inter alia*, that the defendant acted with more than mere negligence.") (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official . . . .") (emphasis in original); *accord Davidson v. Cannon*, 474 U.S. 344, 347

14

(1986); *see also Bryant v. Maffucci*, 923 F.2d 979, 984-85 (2d Cir.) (affirming summary judgment for defendants on due process claims where plaintiff "failed, as a matter of law, to adduce sufficient evidence to permit a jury to find that the defendants' actions were more than merely negligent"), *cert. denied*, 502 U.S. 849 (1991)).  It is significant that Plaintiff does not dispute Fiegl-Bock's statement, Fiegl-Bock Declaration ¶¶ 23-24, that she inadvertently recorded on the hearing disposition sheet that she, rather than Plaintiff, had called Kearney and Addison to testify as witnesses.  Moreover, even assuming, *arguendo*, there is any validity to Plaintiff's statement that by listing Kearney and Addison as witnesses called by Fiegl-Bock, rather than by Plaintiff, Fiegl-Bock, in considering the evidence presented at the disciplinary hearing, would have afforded more weight to the testimony of such witnesses, the testimony given by such witnesses was, objectively, favorable to Plaintiff and, thus, Fiegl-Bock's clerical error would have only benefitted Plaintiff.[6]  As such, this claim is not actionable.  *Pabon v.Wright*, 459 F.3d 241, 249 (2d Cir. 2006) (valid § 1983 claim requires a constitutional deprivation resulting from state action).

The record thus establishes that even assuming, *arguendo*, that the Misbehavior Report filed against Plaintiff by Roberts was intended as retaliation against Plaintiff, because Plaintiff was afforded the minimal Fourteenth Amendment due process protections to dispute such charges, no § 1983 claim lies on this ground.  *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added).  Furthermore, insofar as Plaintiff alleges Defendant Zon failed to intervene to prevent Roberts from

---

[6] That the subject testimony was favorable to Plaintiff is consistent with Plaintiff's assertion that he, rather than Fiegl-Bock, called such witnesses to testify on his behalf.

taking adverse action against Plaintiff for filing the staff misconduct complaints, Plaintiff seeks to hold Zon vicariously liable under the doctrine of *respondeat superior* for several reasons.

First, Plaintiff asserts Zon was aware, based on inmate grievances Plaintiff filed, that Roberts was threatening to take adverse action against Plaintiff in retaliation for the staff misconduct complaints filed against Plaintiff, yet Zon failed to prevent such alleged retaliation.  Personal involvement of the defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983.  *Wright v. Smith,* 21 F. 3d 496, 501 (2d Cir. 1994).  The mere fact of supervisory authority is, however, insufficient to demonstrate liability, based on a failure to supervise, under § 1983. *Colon v. Coughlin,* 58 F. 3d 865, 874 (2d Cir. 1995).  Personal liability of a supervisor can be shown by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) defendant, after being informed of the constitutional violation by report or appeal, failed to remedy the wrong, (3) defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuation of such custom or policy, (4) defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.  *Colon*, 58 F. 3d at 873.  Nevertheless, the mere receipt of a letter of complaint from an inmate is insufficient to establish personal involvement and liability under § 1983.  *Id.*; *see also Freeman v. Goord,* 2004 WL 2002927, at *5 (S.D.N.Y. Sept. 8, 2004); *Gates v. Goord,* 2004 WL 1488405, at *9 (S.D.N.Y. July 1, 2004); *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995).  As such, Plaintiff's filing

16

of inmate grievances with Zon does not support holding Zon vicariously liable based on Zon's supervisory authority over Roberts.

Moreover, as discussed, Discussion, *supra*, at 12-16, Plaintiff received all the Fourteenth Amendment due process required at the Tier III disciplinary hearing held in connection with the Misbehavior Report such that there is no merit to Plaintiff's retaliation claim against Roberts.  The absence of a successful retaliation claim against Roberts renders Plaintiff's supervisory liability claim against Zon without any viability. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (holding, in context of qualified immunity, that there can be no vicarious supervisor liability unless the law violated by defendant supervisor's subordinate was clearly established such that the subordinate is liable).

Because Plaintiff is unable to establish he suffered any adverse action as a result of filing, as ILC chairman, misconduct complaints against Roberts, summary judgment should be GRANTED as to Plaintiff's retaliation claims against both Roberts and Zon. Because the matter is before the undersigned for report and recommendation, the court, in the interest of completeness, addresses the third element of Plaintiff's retaliation claims.

With regard to the third element requiring a causal connection between Plaintiff's participation in the protected activity, *i.e.*, the filing of grievances, and the adverse action, the Second Circuit has held that the temporal proximity of an adverse action in relation to the filing of an inmate grievance is circumstantial evidence of a causal connection so as to establish a retaliation claim. *Colon*, 58 F.3d 872.  Here, because the alleged threats by Roberts occurred throughout the time Plaintiff was filing and

forwarding staff misconduct complaints concerning Roberts, a material fact issue

regarding the causal connection is established as to this aspect of the claim.  As Plaintiff

has demonstrated a material issue of fact necessary to establish that Defendants took

adverse action against Plaintiff based on Plaintiff's grievances, summary judgment on

this portion of Plaintiff's retaliation claim should, alternatively, be DENIED.


3.      **Due Process**

Plaintiff alleges he was denied procedural due process under the Fourteenth

Amendment at the Tier III disciplinary hearing held on January 13, 2005 regarding the

Misbehavior Report.  Plaintiff specifically challenges several actions undertaken by

Fiegl-Bock in connection with the disciplinary hearing, including that (1) although Fiegl-

Bock permitted Plaintiff's inmate witnesses to testify in person, the staff member

witnesses Kearney and Addison testified over a speaker phone without giving a reason

for doing so, Complaint, Second Claim for Relief ¶¶ 7-11; (2) Fiegl-Bock falsified

hearing documents by incorrectly recorded on the hearing disposition sheet that she,

rather than Plaintiff, called Kearney and Addison as witnesses and changing the length

of the penalties imposed, Complaint, Second Claim for Relief ¶¶ 4, 9, 15-18; (3)

although all four witnesses corroborated Plaintiff's retaliation claim, Fiegl-Bock ignored

their testimony in finding Plaintiff guilty as charged, Complaint, Second Claim for Relief

¶¶ 2-3, 5-6, 10-14; and (4) despite telling Plaintiff she had, upon learning of Plaintiff's

disciplinary record, reduced the length of Plaintiff's penalties from 180 to 150 days,

Fiegl-Bock actually increased the length from 120 to 150 days, Complaint, Second

Claim for Relief ¶¶ 15-18.  Defendants assert in support of summary judgment that this

18

claim is barred because Plaintiff has not sought and obtained an administrative determination invalidating the disciplinary hearing disposition as required under *Edwards v. Balisok*, 520 U.S. 641 (1997).  Defendants' Memorandum at 11-12. Alternatively, Defendants maintain that Plaintiff cannot establish that the disciplinary hearing interfered with any protected liberty interest, *id.* at 12-13, or that Fiegl-Bock's conduct of the disciplinary hearing was constitutionally deficient.  *Id.* at 14-15.  As a further alternative, Defendants maintain Fiegl-Bock is qualifiedly immune from liability on this issue.  *Id.* at 15-16.

### A.    Loss of Good Time Credits

In support of Defendants' argument that Plaintiff cannot maintain a § 1983 action challenging a prison disciplinary conviction which, if successful, would necessarily invalidate the imposed sanction of loss of good time credits without first establishing that such conviction was overturned, Defendants rely on *Edwards v. Balisok*, 520 U.S. 641 (1997).  In *Edwards*, the Supreme Court held that if a successful § 1983 action would necessarily imply the invalidity of a prison disciplinary hearing and imposed sanctions which necessarily include the loss of good time credits, thereby affecting the length of the inmate's term of incarceration, the inmate plaintiff must first establish such disciplinary conviction has been overturned either through administrative channels, or by state or federal court.  *Edwards*, 520 U.S. at 648.  In Edwards, the inmate plaintiff claimed a deceitful and biased hearing officer completely denied the plaintiff the opportunity to present any witnesses and also denied that the inmate plaintiff had submitted any witness statements on his behalf.  *Id.* at 646-47.  In other words,

*Edwards* held that no § 1983 action will lie until the inmate plaintiff first establishes that a prison disciplinary conviction, for which is imposed as a sanction the loss of good time credits, was overturned through administrative channels, or a state or federal court proceeding.  *Id*. at 647-48.

The Second Circuit, however, has held that a § 1983 action challenging a disciplinary conviction for which the imposed sanction involved the conditions of confinement, such as confinement to the prison's SHU or loss of privileges, the inmate plaintiff need not "satisfy the favorable termination rule" established by Edwards to maintain the action.  *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006).  The Second Circuit has particularly held that

> in "mixed sanctions" cases, a prisoner can, without demonstrating that the challenged disciplinary proceedings or resulting punishments have been invalidated, proceed separately with a § 1983 action aimed at the sanctions or procedures that affected the conditions of his confinement.  But we also hold that he may only bring such an action if he agrees to abandon forever any and all claims he has with respect to the sanctions that affected the length of his imprisonment.

*Id*. at 100.[7]

In the instant case, because Plaintiff challenges a prison disciplinary conviction for which were imposed the "mixed sanctions" of loss of good time credits, which necessarily extended the length of Plaintiff's actual incarceration, as well as conditions of confinement, including confinement to SHU and loss of commissary, telephone and television privileges packages, Plaintiff need not first establish that the disciplinary

---

[7] The undersigned notes that although the sanction at issue in *Edwards* was also "mixed," see *Edwards*, 520 U.S. at 643 (inmate plaintiff "was sentenced to 10 days in isolation, 20 days in segregation, and deprivation of 30 days' good-time credit he had previously earned toward his release"), the Court did not discuss the implications of such "mixed sanctions" in a § 1983 action as addressed in *Peralta*, *supra*.

conviction was overturned either through administrative channels, or through a state or federal court proceeding.  Instead, a § 1983 action lies insofar as Plaintiff challenges the "conditions of his confinement," *i.e.*, confinement to SHU and loss of privileges.  *Peralta*, 467 F.3d at 100.


   **B.**    **Protected Liberty Interest**

Defendants maintain that there is no merit to Plaintiff's claims against Fiegl-Bock because Fiegl-Bock did not interfere with any protected liberty interest of Plaintiff. Defendants' Memorandum at 12-14.  Plaintiff does not oppose this argument.  Although inmates retain due process rights in prison disciplinary proceedings, *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1984)), the Supreme Court has clarified that due process protections are only required when the resulting disciplinary penalty "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Initially, the court observes that Defendants limit their discussion of *Sandin*'s requirements to the imposition of 150 days confinement in SHU, Defendants' Memorandum at 12-14, but not the contemporaneous loss of packages, telephone and commissary privileges, or the loss of six months good time credit.  Significantly, Plaintiff has a protected liberty interest in his earned good time credit.  *Abed v. Armstrong*, 209 F.3d 63, (2d Cir. 2000) ("inmates have a liberty interest in good time credit they have already earned" (citing *Wolff*, 418 U.S. at 556-58)).  As such, Fiegl-Bock was required to provide Plaintiff with due process before imposing on Plaintiff the penalty that included

the loss of 6 months good time credit, and Defendants cannot be granted summary judgment on this claim on the basis that the imposed penalty did not deprive Plaintiff of any protected liberty interest.

### C.   Due process

Insofar as Plaintiff alleges that Fiegl-Bock's conduct of the disciplinary hearing was constitutionally deficient because Fiegl-Bock refused to permit Kearney and Addison to testify in person, instead receiving their testimony over speaker phone, and incorrectly indicated on the hearing disposition sheet that Fiegl-Bock, rather than Plaintiff, called Kearney and Addison to testify, and thus gave more weight to their testimony, such actions, as discussed, Discussion, *supra*, at 12-16, do not demonstrate any denial of due process.  Nor can any due process violation be found in the fact that Fiegl-Bock initially imposed prison condition sanctions, including confinement to SHU and loss of commissary, telephone and television privileges packages, for 180 days, but later reduced the length of such sanctions to 150 days upon learning of Plaintiff's disciplinary record.  Although Plaintiff maintains that Fiegl-Bock, rather than reducing the length of such sanctions from 180 days to 150 days, actually increased the length of such sanctions from 120 days to 150 days, Complaint, Second Claim for Relief, ¶ 18; Plaintiff's Response to Fiegl-Bock ¶¶ 13-14, nothing in the record supports such assertion.

In particular, Fiegl-Bock explains that the disciplinary infractions of which Plaintiff was convicted warranted imposition of penalties ranging from 180 to 270 days and Fiegl-Bock originally imposed 180 days.  Fiegl-Bock Declaration ¶¶ 31-32.  Upon

learning, however, that Plaintiff had not been the subject of any inmate misbehavior report for five years, Fiegl-Bock *sua sponte* reduced the length of the sanctions from 180 to 150 days.  Fiegl-Bock Declaration ¶¶ 33-34.  This statement is corroborated by Fiegl-Bock's statement at the disciplinary hearing that she was imposing conditions of confinement sanctions of 150 days, Hearing Tr. at 38, and that the length of such sanctions had been reduced because Plaintiff had only had one inmate misbehavior report filed against him during the previous five years.  *Id*. at 39.  Further, the copy of the hearing disposition sheet Defendants submitted in support of summary judgment establishes that Fiegl-Bock initially recorded the length of the penalties being imposed as 180 days, but then changed the "8" to a "5" so as to reduce the length to 150 days.  Fiegl-Bock Declaration Exh. A at FB042.

Plaintiff nevertheless maintains Fiegl-Bock's statement in her Declaration that she reduced the length of the penalties because Plaintiff had not been charged in any inmate misbehavior reports in five years establishes that Fiegl-Bock was lying because Plaintiff had, in fact, been charged in one misbehavior report during that time.  Plaintiff's Response to Fiegl-Bock ¶ 14.  This argument is, however, without merit because the hearing transcript, the accuracy of which Plaintiff does not challenge, establishes that Fiegl-Bock stated on the record at the January 20, 2005 hearing, two months before Plaintiff commenced this action, that she "reduced the penalty I considered for these actions, as you [Plaintiff] have had only one report during the past five years."  Hearing Tr. at 39.  That Fiegl-Bock made such statement before Plaintiff commenced this action establishes that Fiegl-Bock's subsequent statement in support of summary judgment that she reduced the length of Plaintiff's penalty because Plaintiff had no, rather than

only one, misbehavior report filed against him in the previous five years, Fiegl-Bock

Declaration ¶ 33, is nothing more than an honest misrecollection or immaterial error.

Nor does Plaintiff dispute Fiegl-Bock's statement, Fiegl-Bock Declaration ¶ 31, that the

disciplinary infractions of which Plaintiff was convicted warranted imposition of penalties

ranging from 180 to 270 days, which is consistent with Fiegl-Bock's initial imposition of

180 days of penalties until learning of a reason supporting a downward adjustment.

Plaintiff's attack on such uncommon leniency by a prison official is difficult to

comprehend.

As such, summary judgment should be GRANTED in favor of Fiegl-Bock on the

basis that Plaintiff has failed to establish he was denied any due process in connection

with the disciplinary hearing and resulting penalty imposed by Fiegl-Bock.


### 4.    Religious Freedom

Plaintiff's religious liberty claim that Defendant Correctional Officer Turnball

denied Plaintiff a halal meal for Eid ul-Adhal religious observance is asserted under both

the First Amendment's Free Exercise Clause and § 3 of the RLUIPA.  Complaint, Third

Claim for Relief ¶¶ 1-19.  In particular, Plaintiff alleges that Turnball was not personally

involved in providing Plaintiff with food on January 23, 2005, but, rather, merely

observed that Plaintiff was about to receive two trays of food, rather than the one tray

other inmates were receiving, and arranged for the return of the two trays to the mess

hall where either the food from both trays was consolidated onto one tray or a new tray

was prepared for Plaintiff.  Defendants' Memorandum at 16-17; Turnball Declaration ¶¶

16-27.

Because § 1983 does not allow for vicarious liability, Plaintiff must demonstrate some factual issue which, if resolved in Plaintiff's favor, would establish that Turnball was personally involved in interfering with Plaintiff's sincerely held religious beliefs. *Colon*, 58 F. 3d at 874 (the mere fact of supervisory authority is insufficient to demonstrate liability under § 1983 which requires the defendant's personal involvement in the alleged constitutional deprivation).  Here, in opposition to summary judgment, Plaintiff submits the affidavits of then-Wende inmates Robert Taylor ("Taylor") and Robert Womack ("Womack"), Plaintiff's Exhs. F ("Taylor Affidavit") and G ("Womack Affidavit").  Taylor maintains that on January 23, 2005, he was approved to deliver the religious meals to Muslim inmates held in SHU, including Plaintiff.  Taylor Affidavit ¶¶ 1-3.  Upon arriving in the B-Block housing area, Turnball instructed Taylor to surrender Plaintiff's food trays and Taylor responded by placing both the hot and cold food trays on Turnball's desk.  *Id*. ¶¶ 4-5.  Turnball then forbade Taylor from delivering the meal to Plaintiff, and Turnball also refused to serve Plaintiff the meal.  *Id*. ¶¶ 6-7.  Womack states that on January 23, 2005, while incarcerated in Wende's B-Block housing unit, he was served his halal meal for Eid ul-Adha on two trays, with one tray containing hot foods, and the other tray containing cold foods.  Womack Affidavit ¶¶ 3-5.  Defendants point to no evidence establishing serious questions concerning the credibility of these witnesses sufficient to discount their averments for purposes of summary judgment. *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (holding a party "cannot defeat the motion [for summary judgment] by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.").  Because the statements of Taylor and Womack directly contradict

Turnball's assertions that he was not directly involved in the events that Plaintiff maintain caused him to be denied the meal for Eid ul-Adha, summary judgment cannot be granted based on a lack of personal involvement by Turnball and the court addresses the merits of such claim.

A religious liberty claim, whether asserted under the First Amendment or the RLUIPA, requires the prisoner first demonstrate "that the disputed conduct substantially burdens his *sincerely held religious beliefs*."  *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) (italics added) (citing RLUIPA, 42 U.S.C. § 2000cc-1(a), and *Ford v. McGinnis*, 352 F.3d 582, 587 (2d Cir. 2003) (discussing requirements of First Amendment Free Exercise Clause)).  "The defendants [prison officials] then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," to shift the burden back to the inmate to "show that these articulated concerns were irrational."  *Salahuddin*, 467 F.3d at 275 (citing *Ford*, 352 F.3d at 595) (internal quotations marks and brackets omitted) (bracketed material added).  Further, because prisoners retain their right to religious freedom even when incarcerated, inmates are entitled to reasonable accommodation of their religious beliefs, consistent with needs of prisoner security, including "religious dietary beliefs, as 'prison officials must provide a prisoner a diet that is consistent with his religious scruples.'"  *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (citing cases and quoting *Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992)).

In the instant case, a liberal construction of Plaintiff's claims establishes that Plaintiff alleges the failure to consume the Eid ul-Adha meal would violate a key tenet of Plaintiff's Muslim religion.  *Ford v. McGinnis*, 352 F.3d 582, 589-91 (2d Cir. 2003)

26

(holding that for purposes of summary judgment, the court must accept that the plaintiff sincerely believed consumption of a particular meal was critical to the practice of the Muslim faith).  Significantly, Defendants do not argue otherwise.

Accordingly, summary judgment on this claim should be DENIED.


5.    **Qualified Immunity**

Alternatively, Defendants maintain they are qualifiedly immune from liability on this claim.  Defendants' Memorandum at 15-16.  In opposition to summary judgment, Plaintiff argues that because it was not reasonable for Defendants to believe they were acting in a reasonably lawful manner, qualified immunity does not shield them from liability in this action.  Plaintiff's Memorandum at 11-12.

The doctrine of qualified immunity "shields a government official acting in an official capacity from suit for damages under § 1983 unless the official 'violated clearly established rights of which an objectively reasonable official would have known.'" *Blouin v. Spitzer*, 356 F.3d 348, 359 (2d Cir. 2004) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  "The determination generally involves a two-step inquiry: do the facts alleged show the officer's conduct violated a constitutional right, and, if so, was the right in question clearly established?"  *Blouin, supra* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Here, the record before the court fails to establish that qualified immunity shields Defendants from the instant litigation.

In particular, the facts, as alleged in the Complaint and viewed in the light most favorable to Plaintiffs as required on summary judgment, *Rattner*, 930 F.2d at 209, support that Defendants violated Plaintiff's right to petition the government for redress of

grievances by filing a false misbehavior report to retaliate against Plaintiff for filing staff misconduct complaints against Roberts, and by Zon's failing to intervene in such  At the time of the alleged constitutional violations, Plaintiff's right to file an inmate grievance, including verbal complaints to prison supervisors, without fear of retaliation was well established.  *Davis*, 320 F.3d at 352-53 (filing of prison grievances is activity protected by the First Amendment).  The right to due process at a disciplinary hearing was also well established.  *Hanrahan*, 331 F.3d at 97.  Similarly, Plaintiff's right to consume a religious meal in observance of a religious holiday was well-established at the time of the alleged deprivation by Turnball.  *Ford*, 352 F.3d at 592.

As such, Defendants' motion, insofar as it alternatively asserts the defense of qualified immunity, should be DENIED.


## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment (Doc. No. 36), should be GRANTED as to Plaintiff's retaliation claim against Roberts, Plaintiff's supervisory liability claim against Zon and Plaintiff's due process claim against Fiegl-Bock, but DENIED as to Plaintiff's religious freedom claim against Turnball.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        March 19 , 2008
                   Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 19, 2008
            Buffalo, New York